IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18CV159-GCM

| | |
|---|---|
| 7M SECURITIES, LLC, | ) |
| Plaintiff, | ) |
| vs. | ) ORDER |
| DIGI INTERNATIONAL, INC., | ) |
| Defendant. | ) |

This matter is before the Court upon Defendant's Motion for Summary Judgment. This matter is fully briefed and ripe for disposition.

I. **FACTUAL BACKGROUND**

The facts are largely undisputed. Plaintiff 7M Securities, LLC ("7M") is a consulting firm that provides advisory services to clients regarding corporate mergers and acquisitions, private capital transactions, and market insight. In early 2015, Defendant Digi International, Inc. ("Digi"), a communications technology firm, sought 7M's services in relation to Digi's efforts to divest itself of a corporate subsidiary, Etherios, Inc. (the "CRM Division"). On March 23, 2015, the parties executed an engagement letter (the "Agreement") confirming Digi's engagement of 7M's services in connection with the sale of the CRM Division to a third party (the "Transaction").

The Agreement obligated Digi to pay 7M a transaction fee (the "Transaction Fee") at the closing of the Transaction equal to:

a. $250,000 (the "Floor Transaction Fee") payable at the time of closing; plus, potentially:

b. In the event the Aggregate Consideration that is paid to [Digi] at closing is:

1

> > i. between $6,625,000 and $8,000,000, 4% of the Aggregate Consideration less the amount of the Floor Transaction Fee, or
> >
> > ii. if Aggregate Consideration is greater than $8,000,000 or less than $9,500,000, 5% of the Aggregate Consideration less the amount of the Floor Transaction Fee, or
> >
> > iii. if Aggregate Consideration is greater than $9,500,000, 6% of the Aggregate Consideration less the amount of the Floor Transaction Fee;

(Doc. No. 19-1, p.2) "Aggregate Consideration" is defined in the Agreement as follows:

> "Aggregate Consideration" shall mean the cumulative value of the Transaction representing the total value of the CRM Division by the sum of all cash paid or payable and the fair market value of all property or securities transferred or transferable directly or indirectly, in connection with [the] Transaction including (i) cash amounts paid or securities issued . . . (ii) the total amount of indebtedness for borrowed money repaid, retired, extinguished or assumed in connection with [the] Transaction; (iii) the value of any performance payments, equity incentives, cash bonus plans or other similar arrangements established in connection with [the] Transaction and assumed by the buyer in the Transaction (**other than ordinary course base salary and bonuses consistent with past practice and any amounts payable to employees of the CRM Division**); and (iv) amounts paid by the Company to repurchase any of its securities outstanding on the date hereof in connection with [the] Transaction.
>
> *Id*. (emphasis added).

On October 23, 2015, Digi entered into a Stock Purchase Agreement with West Monroe Partners, LLC (the "Buyer"). Under the Stock Purchase Agreement, the Buyer agreed to purchase the CRM Division for a purchase price (the "Purchase Price") of $9,000,000.00 (the "Base Amount"), plus a working capital adjustment payment of $96,352.00 (the "Working Capital Adjustment Payment") and certain other cash, minus certain other amounts and payments. As stated in Paragraph 1.4 of the Stock Purchase Agreement, the Purchase Price was to be paid according to the following schedule:

> At the Closing and on the Closing Date, Buyer will pay to [Digi] an amount equal to (a) the Base Amount [i.e., $9,000,000.00], plus (b) . . . [the Working Capital Adjustment Payment of $96,352.00], minus (c) the Estimated Indebtedness, **minus (d) the amount of Estimated Transaction Expenses**, *plus* (e) the amount of Estimated Cash, minus (f) the First Anniversary Payment [i.e., $3,000,000.00, payable on the one-year anniversary of closing, or October 23, 2016)], minus (g) the Second Anniversary Payment [i.e., $2,000,000.00, payable on the two-year anniversary of closing, or October 23, 2017] . . . .

(Doc. No. 19-5, pp. 4-5) (emphasis added). The Stock Purchase Agreement defines "Estimated Transaction Expenses" as "Transaction Expenses" estimated at the time of closing. *Id*. at p.6. "Transaction Expenses," in turn, are defined as including "Pre-Closing Compensation," or "**any Liability of the [Digi] for payments to, or with respect to, its employees. . . including bonus[es], deferred compensation or similar compensation . . . and accrued paid time off** . . . ." *Id*. at pp. 46, 48 (emphasis added).

At the Transaction's closing, Digi received a payment of $2,865,758.00 from the Buyer. This amount was calculated by taking the Base Amount plus the Working Capital Adjustment Payment, and subtracting the installment payments as well as certain other amounts, including $ 1,134,242.00 in excludable ordinary course payments to employees consisting of:

(1) bonus payments associated with Digi's incentive compensation plans of around $782,000.00;

(2) vacation accruals of around $274,000.00; and

(3) sales commissions of around $74,000.00.

Following the Transaction's closing, on November 4, 2015, Digi wired the sum of $250,000.00 to 7M in payment of the Floor Transaction Fee. The Parties disagree as to the remainder of the Transaction Fee owed to 7M, resulting in this lawsuit. This dispute boils down to how the Aggregate Consideration is calculated pursuant to the Agreement.

3

Digi has moved for summary judgment, arguing that under the unambiguous terms of the Agreement the outstanding balance owed to 7M is $68,484.40.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. To sufficiently demonstrate a genuine dispute as to a material fact, the non-movant may not merely rest on the allegations averred in his pleadings; instead, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. "[I]f the evidence [presented by the non-movant] is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 242 (internal citations omitted).

### B. 7M's Breach of Contract Claim

"The first step for a court asked to grant summary judgment based on a contract's interpretation is, therefore, to determine whether, as a matter of law, the contract is ambiguous or unambiguous on its face." *Monsanto Co. v. ARE-108 Alexander Rd., LLC*,

632 Fed. App'x. 733, 736 (4th Cir. 2015) (quoting *World-Wide Rights Ltd. P'ship v. Combe Inc.*, 955 F.2d 242, 245 (4th Cir. 1992)). Contractual provisions are unambiguous where they are "susceptible of only one reasonable construction," while "ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations." *Register v. White*, 599 S.E.2d 549, 553 (N.C. 2004) (internal quotation marks and citations omitted). Thus, for a provision to be found to be ambiguous, each party's interpretation must be reasonable; the fact that the parties dispute the meaning of a contractual provision does not establish that ambiguity exists. *See Enter. Leasing Co. Southeast v. Williams*, 627 S.E.2d 495, 499 (N.C. Ct. App. 2006). "If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue." *Monsanto Co.*, 632 Fed. App'x. at 736 (quoting *World-Wide Rights*, 955 F.2d at 245).

As noted above, this dispute boils down to how the Aggregate Consideration is calculated. The parties dispute whether the $1,134,242.00 in payments for ordinary course employee bonuses, vacation accruals, and sales commissions should be deducted from the calculation of Aggregate Consideration. A reduction in the purchase price for these payments results in Aggregate Consideration in the amount of $7,962,110.00, payable at the 4% Tier pursuant to the Agreement, which results in an outstanding balance owed to 7M of $68,484.40. If the payments to employees do not reduce the purchase price, the Aggregate Consideration would be $9,096,352.00, payable at the 5% Tier, resulting in an amount owed to 7M of $204, 817.60. The table below demonstrates the difference in these two amounts:

5

| 1 | Amounts Paid to Digi by the Buyer: | Digi Calculation: | 7 Mile Calculation: |
|---|---|---|---|
| 2 | Closing Payment | *$2,865,758.00* | *$4,000,000.00* |
| 3 | + Working Capital Adjustment Payment | $96,352.00 | $96,352.00 |
| 4 | + Installment Payment | $3,000,000.00 | $3,000,000.00 |
| 5 | + Installment Payment | $2,000,000.00 | $2,000,000.00 |
| 6 | = Aggregate Consideration (total paid to Digi): | $7,962,110.00 | $9,096,352.00 |
| 7 | **Aggregate Consideration Tier:** | 4% | 5% |
| 8 | **Total Consideration Payable to 7 Mile:** | $318,484.40 | $454,817.60 |
| 9 | **Less Floor Transaction Fee:** | ($250,000.00) | ($250,000.00) |
| 10 | *Outstanding Balance of Transaction Fee (Aggregate Consideration Minus Floor Transaction Fee):* | $68,484.40 | $204,817.60 |

The amount of cash Digi received at closing is not in dispute. Digi received a payment of $2,865,758.00 from the Buyer at the Transaction's closing representing the difference between the Base Amount plus Working Capital Adjustment Payment, and the installment payments and certain other amounts, including the $1,134,242.00 in ordinary course payments to employees. The $1,134,242.00 was deducted from the purchase price paid to Digi as a Transaction Expense pursuant to the terms of the Stock Purchase Agreement.

It appears to the Court that the Agreement and the Stock Purchase Agreement are non-ambiguous. As noted above, the Stock Purchase Agreement defines Transaction Expenses to include "Pre-Closing Compensation," or "**any Liability of the Company for payments to, or with respect to, its employees . . . including bonus, deferred compensation or similar compensation . . . and accrued paid time off** . . . ." (Doc. No. 19-5, pp. 6, 46, 48) (emphasis added). Thus, the Buyer was entitled to deduct these expenses from the closing payment of the purchase price, reflecting a decrease in the value of the CRM division. This amount was not received by Digi at closing, or any

other time thereafter. The correct amount of the closing payment as noted in Digi's calculation above is $2,865,758.00—and not $4,000,000.00, as 7M contends.

Moreover, these same ordinary course payments that were deducted from the Purchase Price by the Buyer pursuant to the terms of the Stock Purchase Agreement as a Transaction Expense were properly deducted by Digi from the Transaction's Aggregate Consideration pursuant to the Agreement. As noted above, the Agreement clearly provides that Aggregate Consideration is based on the sum of all cash paid or payable. Digi received $2,865,758.00 at closing, not $4,000,000.00. The total value of the CRM Division and Aggregate Consideration, as established in the Agreement and represented by the sum of all cash paid to Digi, was $7,962,110.00. Additionally, Aggregate Consideration expressly excludes "ordinary course base salary and bonuses consistent with past practice and any amounts payable to employees of the CRM Division." (Doc. No. 19-1, p. 2). Pursuant to the unambiguous terms of the Agreement, these amounts are properly excluded from the calculation of Aggregate Consideration.

7M argues that the difference of $1,134,242.00 for payments made to employees and deducted from the Purchase Price should still be included in the calculation of the Transaction's Aggregate Consideration. 7M simply contends that "[b]ecause the Purchase Price [including the amount of $1,134,242.00] was between $8,000,000.00 and $9,500,000.00, [7 Mile] was entitled to 5% thereof, or $450,000.00 as the Transaction Fee." (Compl. ¶¶ 24-25.) 7M argues that the meaning of the term "Aggregate Consideration" is ambiguous because it could mean net cash received or cumulative value. Likewise, 7M contends that the phrase "ordinary course base salary and bonuses

consistent with past practice" is vague.[1] It appears the 7M is attempting to manufacture ambiguity where none exists. The Agreement expressly excludes from the calculation of Aggregate Consideration payments to employees for salary or other employee benefits pertaining to the period of time prior to the Transaction.

To interpret the Agreement as 7M proposes is to ignore a plain reading of the Agreement and the Court's obligation to "harmoniously construe" the Agreement and Stock Purchase Agreement so as to give effect to all their terms. *See WakeMed v. Surgical Care Affiliates, LLC*, 778 S.E.2d 308, 312 (N.C. Ct. App. 2015) (internal quotation marks and citation omitted) ("[O]ur courts adhere to the central principle of contract interpretation that [t]he various terms of the [contract] are to be harmoniously construed, and if possible, every word and every provision is to be given effect.").

The Court finds as a matter of law that the contract is unambiguous and $68,484.40 is the remainder due 7M under the Agreement.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment is hereby GRANTED.

Signed: May 9, 2019

Graham C. Mullen
United States District Judge

---

[1] Interestingly, the Agreement was based upon 7M's own "template."